Cindi M. Giglio, Esq.
Lindsay C. Lersner, Esq.
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, NY 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776
E-Mail: cgiglio@katten.com
llersner@katten.com

*Attorneys for Steven J. Reisman as*
*Postconfirmation Representative of the*
*Chapter 11 Estates of 360networks (USA) inc., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| 360NETWORKS (USA) INC., *et al.*, | : | Case No.: 01-13721 (ALG) |
| | : | [CASE CLOSED; **THIS FILING IS** |
| Debtors. | : | **AUTHORIZED BY THE COURT'S** |
| | : | **ORDER OF 12-8-11 [DKT 2160]**] |

------------------------------------------------------------------x

### POST-CLOSURE STATUS REPORT
### OF THE POSTCONFIRMATION REPRESENTATIVE
### OF THE ESTATES OF 360NETWORKS (USA) INC., *ET AL*.
### FOR THE PERIOD FROM DECEMBER 21, 2018 THROUGH JUNE 20, 2019

Steven J. Reisman, solely in his capacity as the Postconfirmation Representative (the "Representative") appointed in the above-captioned chapter 11 cases (the "360networks Cases"), hereby provides this post-closure status report (the "Post-Closure Status Report"), dated as of June 20, 2019. This is the Representative's fifteenth Post-Closure Status Report.

The Representative presents this Post-Closure Status Report pursuant to the *Order Granting Omnibus Motion of the Postconfirmation Representative of the Estates of 360networks (USA) inc., et al. (I) Authorizing an Interim Distribution to Holders of Allowed General Unsecured Claims, (II) Entering Final Decrees Closing the Chapter 11 Cases, (III) Authorizing the Representative to Continue to Prosecute Potential Sources of Additional Recoveries, and*

*(IV) Granting Certain Related Relief, Pursuant to 11 U.S.C. §§ 105(a), 350, 505, 554 and 1142, and Bankruptcy Rules 3020(d), 3021, 3022, 6004(h) and 7062,* approved by the above-captioned bankruptcy court (the "Bankruptcy Court") and entered on December 8, 2011 [Docket No. 2160] (the "Omnibus Order").

The format of this Post-Closure Status Report is in conformity with the format approved by the Omnibus Order and attached as "Exhibit D" to the *Omnibus Motion of the Postconfirmation Representative of the Estates of 360networks (USA) inc., et al. for an Order in Aid of Implementation of Confirmed Chapter 11 Plan of Reorganization (I) Authorizing an Interim Distribution to Holders of Allowed General Unsecured Claims, (II) Entering Final Decrees Closing the Chapter 11 Cases, (III) Authorizing the Representative to Continue to Prosecute Potential Sources of Additional Recoveries, and (IV) Granting Certain Related Relief, Pursuant To 11 U.S.C. §§ 105(a), 350, 505, 554 and 1142, and Bankruptcy Rules 3020(d), 3021, 3022, 6004(h) and 7062*, filed on November 11, 2011 [Docket No. 2126] (the "Omnibus Motion").

On December 20, 2018, the Representative filed his *Post-Closure Status Report of the Postconfirmation Representative of the Estates Of 360networks (USA) inc., et al. for the Period from June 21, 2018 Through December 20, 2018* [Docket No. 2219] (the "Fourteenth Post-Closure Report").[1]

Effective March 20, 2018, the Representative resigned from the law firm of Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis") and joined the law firm of Katten Muchin

---

[1] You may obtain a free copy of any document referenced herein by sending your written request to the Representative, Steven J. Reisman, and his counsel, Cindi M. Giglio, at Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New York 10022-2585 (Attn: Steven J. Reisman and Cindi M. Giglio) or by e-mail to: sreisman@katten.com and cgiglio@katten.com.

Rosenman LLP ("Katten").  As of such date, the Representative engaged Katten as his counsel in substitution of Curtis.

The Representative reports as follows:

| | |
|---|---:|
| Funds collected by the Representative, December 20, 2018 through June 20, 2019: | $541.55 |
| Total funds collected by the Representative to date: | $23,712,324.84[2] |
| 1. Total administrative fees and expenses for the period from the Representative's appointment through the Court's approval of his first and final fee application (December 23, 2008 through September 30, 2011): | $3,672,671.67 |
|    a. Representative's counsel's fees and expenses: | $3,340,592.27[3] |
|    b. LSI's "substantial contribution" claim: | $166,783.04[4] |
|    c. UHY's fees and expenses: | $78,469.09[5] |
|    d. Professional mediator's fees: | $54,320.00 |
|    e. U.S. Trustee's quarterly fees (Q3 2011): | $20,017.89 |
|    f. Fees of noticing agent Epiq Systems: | $12,489.38 |
| 2. Total administrative fees and expenses for October 1, 2011 through June 20, 2019: | $1,380,758.91[6] |
|    a. Representative's fees and expenses: | $1,326,249.33[7] |
|    b. U.S. Trustee's quarterly fees (Q4 2011): | $20,000.00 |
|    c. CPA for tax returns for 2009-2017: | $17,500.00 |
|    d. Fees of noticing agent Epiq Systems: | $11,839.91 |

---

[2] This amount includes interest earned on collected funds.

[3] This amount, which is net of $746,388.25 of voluntary discounts and reductions, was approved by the Bankruptcy Court's Order entered December 8, 2011 [Docket No. 2158].

[4] This amount was approved by the Bankruptcy Court's Order entered December 23, 2011 [Docket No. 2176].

[5] This amount, which is net of $8,666.55 of voluntary discounts, was approved by the Bankruptcy Court's Order entered December 8, 2011 [Docket No. 2159].

[6] This amount includes Katten's fees and expenses of $10,521.38 for the month of December 2018 which, as referenced in the Fourteenth Post-Closure Report, were not included in the calculations on the Fourteenth Post-Closure Report because billing for December 2018 had not yet closed. This amount also includes Katten's fees and expenses for the months of January 2019 through and including May 2019 totaling $14,675.21, $8,155.05 of which has been billed but not yet paid. The total of $25,196.59 breaks down as follows:  (i) $10,521.38 for December 2018 (ii) $5,323.70 for January 2019; (iii) $1,196.46 for February 2019; (iv) $6,451.65 for March 2019; (v) $262.95 for April 2019; and (vi) $1,440.45 for May 2019. This amount does not include Katten's fees and expenses for the month of June 2019, which will be billed in the ordinary course once the billing for that month is closed.

[7] This amount is net of $133,459.10 of voluntary discounts and reductions provided by Katten and Curtis, and of a $22,500 credit for the reimbursement of Curtis' fees that the Representative received from Pilchuk Diversified Services in connection with Curtis' December 2011 fee statement.

|   |   |
|---|---|
| e. Bank fees: | $5,169.57 |

3. Cumulative total administrative fees and expenses for December 23, 2008 through June 20, 2019:     $5,053,430.48

|   |   |
|---|---|
| a. Representative's fees and expenses: | $4,666,841.60[8] |
| b. UHY's fees and expenses: | $78,469.09 |
| c. U.S. Trustee's quarterly fees (Q3 and Q4 2011): | $40,017.89 |
| d. LSI's "substantial contribution" claim: | $166,783.04 |
| e. Mediator's fees: | $54,320.00 |
| f. Other administrative expenses: | $46,998.86[9] |

4. Interim Distribution to Class 7 in December 2011:     $14,000,000.00

5. Second Interim Distribution to Class 7 in December 2014:[10]     $2,200,001.00

6. Third Interim Distribution to Class 7 in June 2016:[11]     $1,372,999.00

7. Total Transferred in Connection with Fourth Interim Distribution to Class 7 in August 2018:[12]     $1,077,564.49

|   |   |
|---|---|
| a. Amount of Fourth Interim Distribution | $874,999.87 |
| b. Amount of Unclaimed Property from the Third Interim Distribution in June 2016 (the "Unclaimed Funds"), distributed as "Catch-Up Distribution" with Fourth Interim Distribution:[13] | $202,938.35 |
| c. Third Interim Distribution Hold-Back Funds Distributed with Fourth Interim Distribution Interim Distribution Hold-Back[14] | $10,223.73 |

---

[8] *See* n. 6.

[9] "Other administrative expenses" include (i) fees of noticing agent Epiq Systems, (ii) fees and expenses of CPA for tax returns, and (iii) bank fees.

[10] *See Notice of Postconfirmation Representative's Second Interim Distribution to Class 7 General Unsecured Creditors*, dated as of November 10, 2014 [Docket No. 2189].

[11] *See Notice of Postconfirmation Representative's Third Interim Distribution to Class 7 General Unsecured Creditors*, dated as of June 1, 2016 [Docket No. 2200].

[12] *See Notice of Postconfirmation Representative's Fourth Interim Distribution to Class 7 General Unsecured Creditors*, dated as of August 14, 2018 [Docket No. 2215].

[13] Unclaimed Funds from previous distributions were included in the Third Interim Distribution, and distributed as a catch-up distribution to those same claimants who were originally entitled to the Unclaimed Funds with the Fourth Interim Distribution.

[14] This is the amount of distributions that the Representative held-back at the time of the Third Interim Distribution because the distributions allocated to the claimants did not aggregate more than $100 on account of such claimant's particular Class 7 claim. In connection with the Fourth Interim Distribution, the Representative distributed this amount to the same claimants who were originally entitled to those funds, in addition to their pro-rata share of the Fourth Interim Distribution.

| | |
|---|---:|
| d. Fourth Interim Distribution Hold-Back[15] | ($10,597.46) |
| 8. Approximate % Recovery on Class 7 Claims: | 10.81% of participating claims[16] |
| 10. Additional Interim/Final Distribution: | TBD |
| 11. Approximate Total % Recovery on Claim: | TBD |
| 12. Cash held by Representative as of June 20, 2019: | $16,652.49 |

**Potential Sources of Additional Recoveries**

The following is a description and brief update on the status of each of the remaining matters identified in the Omnibus Motion as "Potential Sources of Additional Recoveries" that may result in additional recoveries for the benefit of holders of allowed Class 7 claims:

1. <u>Unsecured Claim Against Dreier LLP</u>. The Representative, on behalf of the estates of the above-captioned 360networks debtors (the "<u>360 Estates</u>"), has an allowed general unsecured claim in the Chapter 11 case of Dreier LLP (the "<u>DLLP Case</u>") in the amount of $45,100,000 (the "<u>DLLP Claim</u>"). The DLLP Case is pending before the U.S. Bankruptcy Court for the Southern District of New York as Case No. 08-15051 (SMB). An order approving the *Second Amended Plan of Liquidation for Dreier LLP Jointly Proposed by the Chapter 11 Trustee and the Official Committee of Unsecured Creditors Pursuant to Chapter 11 of the United States Bankruptcy Code, as it may be amended or supplemented* (the "<u>DLLP Plan</u>") was entered on April 29, 2014. The DLLP Plan became effective on May 13, 2014 (the "<u>Effective Date</u>").

Prior to the Effective Date, the Representative was the Chair of the official committee of unsecured creditors in the DLLP Case (the "<u>DLLP Committee</u>"). In order to move the DLLP Case forward with the objective of obtaining a meaningful distribution as soon as possible consistent with the best interests of the holders of allowed general unsecured claims in the DLLP Case, the DLLP Committee participated in drafting, and was the co-proponent of, the DLLP Plan.

Pursuant to the DLLP Plan, upon the occurrence of the Effective Date, Sheila M. Gowan was appointed as the Plan Administrator (as defined under the DLLP Plan). As of the Effective Date, the DLLP Committee was disbanded, except for certain limited purposes, and its oversight functions were transitioned to a plan oversight committee (the "<u>DLLP Plan Oversight Committee</u>"). The Representative is serving as a member of the DLLP Plan Oversight Committee with the objective of ensuring a quick and meaningful distribution to general

---

[15] In connection with the Fourth Interim Distribution, consistent with section 5.3(f) of the Plan, the Representative did not make distributions that would aggregate less than $100 on account of a particular Class 7 claim (when considering catch-up distributions and the incremental Fourth Interim Distribution).

[16] For purposes of this Post-Closure Status Report, allowed general unsecured claims participating in Class 7 do not include the claims of Pirelli Communications Cables & Systems USA LLC and CapRock Telecommunications Corporation (which claim is owned by Reorganized 360), both of which are afforded different treatment than other Class 7 claims by virtue of certain settlement agreements approved by the Bankruptcy Court.

unsecured creditors. On or about August 29, 2014, the Representative received an initial distribution on account of the DLLP Claim in the amount of $2,255,000. On or about December 28, 2015, the Representative received a second distribution on account of the DLLP Claim in the amount of $1,353,000. On or about December 28, 2017, the Representative received a third distribution on account of the DLLP Claim in the amount of $902,000. As disputed claims have been resolved in the DLLP Case, the Plan Administrator has transferred funds not necessary to be expended from the Disputed Claims Reserve (as defined under the DLLP Plan) to the Unsecured Creditor Fund (as defined under the DLLP Plan) for the holders of Class 4 general unsecured claims.

For information purposes only, the fees and expenses of the Representative's counsel related to the DLLP Plan Oversight Committee are being paid solely from the DLLP estate.

2. <u>Administrative Claim Against Dreier Chapter 7 Case</u>. In addition to the claim against Dreier LLP summarized above, the Representative resolved claims on behalf of the 360 Estates filed in the Chapter 7 case of Marc S. Dreier (the "<u>Dreier Chapter 7 Case</u>") pending before the U.S. Bankruptcy Court for the Southern District of New York as Case No. 09-10371 (SMB). Pursuant to the *Stipulation and Order Between Salvatore LaMonica, as Chapter 7 Trustee of the Estate of Marc S. Dreier, and Steven J. Reisman, as Post-Confirmation Representative of the Chapter 11 Estates of 360networks (USA) Inc. and Affiliated Debtors*, entered on April 25, 2017, the 360 Estates were granted an allowed administrative claim under Sections 503(b) and 507(a)(2) of the Bankruptcy Code in the amount of $19,513 related to the fees and expenses of the Representative in connection with the commencement of the Dreier Chapter 7 Cases as a petitioning creditor (the "<u>Administrative Claim</u>"), and an allowed general unsecured claim in the amount of $47,872,519 (the "<u>Dreier Chapter 7 Unsecured Claim</u>"). On or about June 12, 2018, the Representative received payment on account of the Administrative Claim. According to the *Trustee's Final Report*, filed in the Dreier Chapter 7 Case on March 30, 2018, there will be no distribution on account of the Dreier Chapter 7 Unsecured Claim.

3. <u>New York Lawyers' Fund for Client Protection</u>. The Representative has advised creditors that The Lawyers' Fund For Client Protection of the State of New York (the "<u>Lawyers' Fund</u>") (<u>see</u> 22 NYCRR § 7200 *et seq*.) may offer relief to certain creditors of the 360 Estates if the amounts that Dreier stole from the 360 Estates are not recovered in full. The applicable regulations place a $300,000 cap on an individual claimant's recovery, and bars claims from (i) entities with 20 or more employees and (ii) financial institutions. Any entity seeking reimbursement from the Lawyers' Fund must provide a sworn verification regarding the statements made in the application for reimbursement.

In January 2010, the Lawyers' Fund advised the Representative that claims to the Lawyers Fund would be deemed "premature" until conclusion of (i) the Dreier Forfeiture Proceedings and (ii) the bankruptcy proceedings in the Marc Dreier and Dreier LLP bankruptcy cases (both of which remain open currently). (<u>See</u> Ex. B to Representative's Fifth Interim Report [Docket No. 2057].)

Attached hereto as "**Exhibit A**" is a "model" claim form that qualified creditors may complete, verify and submit to the Lawyers' Fund at the appropriate time. The

Representative's counsel will be available to answer questions for creditors in this regard, but will not have any further role with respect to claims against the Lawyers' Fund.

4. <u>Restitution Payments</u>. In 2009, Marc Dreier plead guilty to securities in wire fraud in the criminal case United States v. Dreier (09-00085) (the "<u>Criminal Case</u>"). The "Unsecured Creditors of 360networks USA Inc" (the "<u>Unsecured Creditors</u>") are a victim in the Criminal Case. In connection with the Criminal Case, Mr. Dreier was ordered to pay restitution to his victims, including the Unsecured Creditors. The Unsecured Creditors are owed a total of $38,596,354.56. Mr. Dreier has begun making restitution payments. In early June, the Representative received the first restitution payment in the amount of $514.55. Any further payments are contingent on Mr. Dreier honoring his obligations to make the restitution payments.

5. <u>Proposed Sale of DLLP Claim</u>. As explained in the Fourteenth Post-Closure Report, the Representative has commenced a marketing and sale process with respect to its interest in the DLLP Claim. By monetizing the DLLP Claim, the Representative will be able to make a final distribution to Class 7 claimants and complete his administration of the 360networks Cases.

6. <u>Other</u>. It is possible that, in the course of further fulfilling his duties, the Representative may discover additional claims or sources of recovery for the benefit of the 360 Estates; however, as of the date hereof, the Representative has not identified additional sources of recovery for the benefit of the 360 Estates.

**Fees and Expenses**

Fees and expenses from December 21, 2018 through May 2019 total $25,196.59 (for Katten's fees and expenses), $8,155.05 of which is yet to be paid. The Representative has continued to work to minimize his fees and expenses and of counsel in order to maximize distributions to creditors.

**Additional Distributions**

As mentioned above, the Representative has commenced a marketing and sale process in order to monetize the remaining interest in the DLLP Claim. Proceeds from the sale of the DLLP Claim will allow the Representative to make a final distribution to holders of Class 7 claims and close the estate.

Dated: June 27, 2019
      New York, New York

*/s/ Steven J. Reisman*
Steven J. Reisman, *solely in his capacity as Postconfirmation Representative of the Chapter 11 Estates of 360networks (USA) inc., et al*.

Note: You are encouraged to share this Report with any parties in interest. You may contact the Representative, Steven J. Reisman, and his counsel, Cindi M. Giglio, by sending your written request to Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, NY 10022-2585 (Attn: Steven J. Reisman and Cindi M. Giglio), by e-mail to: sreisman@katten.com *and* cgiglio@katten.com.

The Lawyers' Fund for Client Protection
of the State of New York

APPLICATION FOR REIMBURSEMENT

> Instructions:
>
> **You must answer every question in this application. Incomplete applications will be returned.** If space is inadequate, attach additional page.
>
> You must provide us with: copies of all evidence that proves your loss, such as cancelled checks, receipts, letters, closing statements, disciplinary and criminal complaints, etc.
>
> **Mail the completed application and supporting documentation to:**
> The Lawyer's Fund for Client Protection, 119 Washington Avenue, Albany, New York 12210.

1. Your name and Address:    Mr.    Mrs.    Miss    Ms.    Age(s) ____ ___

   Name:

   Address:

   Home Telephone:                 Social Security or Federal Tax ID #:
   Business Telephone:            Occupation and Employer:

2. Name, address and telephone number of the attorney who has dishonestly taken your money or property:

   **Mark S. Dreier**
   **Dreier LLP**
   **c/o Sheila Gowan, Chapter 11 Trustee for Dreier LLP**
   **Diamond McCarthy LLP**
   **489 Fifth Avenue, 21st Floor**
   **New York, NY 10017**

3. What legal services did you ask this attorney to perform for you?

   **Marc Dreier was sole shareholder of Dreier LLP. Dreier LLP was counsel to the Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 Cases of 360networks (USA) inc., *et al.*, S.D.N.Y. Case No. 01-13721 (ALG) (the "360 Cases"). Dreier LLP was retained by the Committee to prosecute avoidance actions for the benefit of the unsecured creditors and the reorganized debtors in the 360 Cases. From 2003 to 2008, the Committee, with Dreier LLP as its counsel,**

**recovered more than $74 million, which was to be held by Dreier LLP in trust for the Committee.**

4. How much did you pay this attorney?

   **The Committee paid Dreier LLP $9,276,165.**

5. Was your agreement with the attorney in writing?   Yes   No .  If yes, attach a copy of the agreement.

6. Did your loss involve:   money  other property?  Specify:

7. What is the amount of your loss?

   **As of December 4, 2008, the date that Marc Dreier's theft became public, I was entitled to receive a distribution of $_____ from the Committee.**

   **I received $_____ from Steven J. Reisman, solely in his capacity as the Postconfirmation Representative (the "360 Representative") in the 360 Cases.**

   **My net loss is therefore $_____.**

8. Provide the date when your loss occurred:

   **According to the *Report of the Postconfirmation Representative Regarding Potential Claims Against Members Of The Official Committee Of Unsecured Creditors, dated February 2, 2011* (S.D.N.Y. Bankr. Case No. 01-13721, Docket No. 2088), Marc Dreier stole the Committee's funds over a period from October 2007 through April 2008.**

9. When and how did you discover your loss?

   **On or about December 4, 2008, when Marc Dreier's arrest became public, and it soon after became clear that the Committee's funds had been stolen.**

10. Describe the attorney's dishonest conduct:

    **Theft of client funds from law firm trust accounts.**

11. This loss has been reported to:  District Attorney     Attorney Grievance Committee
                                     Police         Other

    Attach a copy of your complaint and any response received.

    **Marc Dreier's theft from the Dreier LLP escrow accounts was reported to, and investigated by, the Unites States Attorney for the Southern District of New York, the Securities and Exchange Commission, and the Attorney Grievance Committee**.

12. Describe what steps you have taken to recover your loss from the dishonest attorney:

    **The 360 Representative was appointed to investigate and recover the stolen funds for the benefit of the unsecured creditors in the 360 Cases, including me/us.**

13. Can your loss be reimbursed from other source, such as insurance, fidelity bonds or surety agreements?  Yes        No        Don't know . If Yes, describe the source:

   **A portion of the loss has been, or will be, recovered.  The 360 Representative collected from the victim restitution fund from the United States and distributed the proceeds to the unsecured creditors in the 360 Cases.  As of December 20, 2017, the 360 Representative has collected, for the benefit of the unsecured creditors, distributions in the aggregate of $3,608,000 from the Dreier LLP and Marc S. Dreier bankruptcy estates.**

14. State other facts that you believe are important to the Fund's consideration of your claim:

   **Claimant incorporates by reference the *First Interim Report of the Postconfirmation Representative*, dated March 17, 2009, filed in the 360 Cases, and documents annexed thereto.**

15. How did you learn about the Lawyers' Fund for Client Protection?

   **From the 360 Representative.**

16. Name, address and telephone number of your present attorney:


17. You must attach copies of receipts, cancelled checks and other documents that prove your loss.

   - *Court Rules do not permit attorneys who help clients process claims with the Fund to charge legal fees for that service, except with the permission of the Fund's Board of Trustees*
   - *Should you receive an award from the Fund, the facts relating to your loss become a public record.*
   - *The Fund's Regulations can be found at 22 NYCRR 7200.*

I (We) verify and affirm, *under penalty of perjury*, that the information provided in this application is true.

_____          _____
             *Date*                                    *Signature of Claimant*

                                         _____
                                               *Signature of Claimant*